UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARTER TOWNSHIP OF SHELBY POLICE & FIRE PENSION & RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>                Plaintiff,<br><br>           v.<br><br>ARCONIC CORPORATION, TIMOTHY MYERS, ERICK ASMUSSEN, and FREDERICK HENDERSON,<br><br>                Defendants. | Case No. 1:25-cv-00863-AKH |

**MEMORANDUM OF LAW IN SUPPORT OF CHARTER TOWNSHIP OF SHELBY POLICE & FIRE PENSION & RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND <u>APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................... 2

      A.    The Defendants ...................................................................................................... 2

      B.    The Defendants Alleged Fraudulent Scheme in Violation of Section 10(b) and Rule 10b-5(a) and (c) ......................................................................................... 3

      C.    The Defendants' Alleged False and Misleading Statements in Violation of Section 10(b) and Rule 10b-5(b)................................................................................. 6

      D.    The Truth Concerning the Defendants' Alleged Fraudulent Scheme and False and Misleading Statements is Revealed ......................................................... 8

      E.    Procedural History ................................................................................................. 8

ARGUMENT ................................................................................................................................ 9

I.      Shelby P&F Is the Most Adequate Plaintiff and Should Be Appointed Lead Plaintiff ............................................................................................................... 9

      A.    The Lead Plaintiff Framework Under the PSLRA ................................................. 9

      B.    Shelby P&F Has Satisfied the PSLRA's Procedural Requirements....................... 9

      C.    Shelby P&F Has the "Largest Financial Interest" in the Relief Sought by the Class ................................................................................................................. 10

      D.    Shelby P&F Satisfies the Typicality and Adequacy Requirements of Rule 23....................................................................................................................... 11

II.     Shelby P&F's Selection of Wolf Popper to Serve as Lead Counsel Should Be Approved.............................................................................................................. 12

CONCLUSION............................................................................................................................ 14

WORD COUNT CERTIFICATION ........................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Hoare v. Oddity Tech. Ltd.*,
   No. 1:24-CV-06571 (MMG), 2024 U.S. Dist. LEXIS 220596 (S.D.N.Y. Dec. 5, 2024) .. 10, 12

*Martinek v. AmTrust Financial Services, Inc.*,
   No. 19-cv-08030-KPF, 2022 U.S. Dist. LEXIS 209097 (S.D.N.Y. Nov. 16, 2022)................ 13

*Martinek v. AmTrust Financial Services, Inc.*,
   No. 19-cv-08030-KPF, ECF No. 111 (Final Judgment) (S.D.N.Y. Nov. 16, 2022) ............... 13

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance
   Corp. I*,
   No. 2:09-cv-01713, ECF No. 230 (Transcript) (E.D.N.Y. July 24, 2014) ............................... 13

*San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*,
   177 F. Supp. 3d 838 (D. Del. 2016)..................................................................................... 10

*Vega v. Energy Transfer LP*,
   No. 22-cv-4614 (AKH), 2022 U.S. Dist. LEXIS 146668 (S.D.N.Y. Aug. 16, 2022) .... 9, 11, 12

*White Pine Invs. v. CVR Refining, LP*,
   No. 20-cv-2863 (AT), 2021 U.S. Dist. LEXIS 1199 (S.D.N.Y. Jan. 5, 2021) ........................ 10

**Statutes**

15 U.S.C. § 78j(b) ................................................................................................................... 1

15 U.S.C. § 78u-4(a) ..................................................................................................... passim

**Rules**

17 C.F.R. § 240.10b-5.............................................................................................................. 1

**PRELIMINARY STATEMENT**

This is a securities class action brought on behalf of a "Class" of all persons who sold publicly traded shares of Arconic Corporation ("Arconic" or the "Company") common stock between April 19, 2022 and May 3, 2023, both dates inclusive (the "Class Period"). The action arises from the defendants' failure to disclose offers by a third party to purchase all of the outstanding shares of Arconic common stock at a material premium far above the Company's then-current stock price, while at the same time repurchasing millions of shares of Arconic common stock through stock buyback programs at prices below the offer price. The Complaint alleges that Arconic, as a person in possession of material nonpublic information concerning Arconic, had a duty to abstain from trading in Arconic common stock or to disclose the material nonpublic information. Arconic did neither. Arconic's actions constituted a device, scheme, or artifice to defraud, or operated as a deceit upon the Class, in violation Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5(a) and (c), 17 C.F.R. § 240.10b-5. The complaint also alleges that the defendants' failure to disclose the information about the offers while engaging in share repurchases was an omission of material fact that rendered other statements made materially misleading, in violation of Section 10(b) and Rule 10b-5(b). The Complaint also alleges claims for control person liability under Section 20(a) against defendants Myers, Asmussen, and Henderson.

Plaintiff and Class member Charter Township of Shelby Police & Fire Pension & Retirement System ("Shelby P&F") respectfully seeks appointment as Lead Plaintiff in the action. Shelby P&F meets all the requirements of the Private Securities Litigation Reform Act ("PSLRA") for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Shelby P&F timely filed this motion, and believes it has the largest financial interest in the relief sought by the Class of sellers of Arconic common stock during the Class Period. Shelby P&F sold 7,301 shares of

1

Arconic common stock during the Class Period and suffered $42,273.98 in losses as a result of defendants' alleged violations of the federal securities laws. *See* Ruthizer Decl. Ex. 3.[1] Shelby P&F also satisfies the adequacy and typicality requirements of Rule 23. Notably, Shelby P&F is a pension fund with more than $142 million assets under management. As a sophisticated institutional investor, Shelby P&F is the type of investor whose participation Congress sought to encourage when enacting the PSLRA.

Shelby P&F further requests that the Court approve its selection of Wolf Popper LLP to serve as Lead Counsel for the Class. Wolf Popper is a nationally recognized securities litigation firm with a consistent record of achieving substantial recoveries for the benefit of injured investor classes, and has the expertise and resources necessary to provide high quality legal representation to the Class.

**FACTUAL AND PROCEDURAL BACKGROUND**

### A.    The Defendants

Defendant Arconic was a publicly-traded provider of aluminum sheets, plates, and extrusions, as well as innovative architectural products, that advance the ground transportation, aerospace, building and construction, industrial, and packaging end markets. On August 18, 2023, Apollo Global Management, Inc. (together with its subsidiaries, "Apollo") acquired Arconic and assumed Arconic's obligations. ¶ 20.[2]

Defendant Timothy Myers was, at all relevant times, the Chief Executive Officer ("CEO") and President of Arconic, and a member of the Arconic Board of Directors (the "Board"). Defendant Erick Asmussen was, at all relevant times, the Executive Vice President and Chief

---

[1] Declaration of Joshua W. Ruthizer, Esq., in Support of Shelby P&F's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Ruthizer Declaration").

[2] Unless otherwise stated, all references to "¶_" are to the paragraphs of the Complaint filed in this action on January 29, 2025 (ECF No. 1).

Financial Offer ("CFO") of Arconic. Defendant Frederick Henderson ("Henderson") was, at all relevant times, Chairman of the Board. ¶¶ 22-24.

### B.    The Defendants Alleged Fraudulent Scheme in Violation of Section 10(b) and Rule 10b-5(a) and (c)

On May 4, 2021, Arconic announced that its Board approved a stock repurchase program authorizing Arconic to repurchase up to $300 million worth of common stock, effective immediately, over a two-year period expiring April 28, 2023 (the "2021 Program"). ¶ 28. As of March 31, 2022, there was approximately $123 million remaining of the $300 million authorized for shares repurchases in the 2021 Program. ¶ 35. Before, during, and after the Class Period, Arconic disclosed in its Form 10-Qs and 10-Ks, for the quarter that was the subject of the filing: (a) the total amount of dollars spent on share repurchases during the quarter, (b) the total number of shares repurchased during the quarter and in each month during the quarter, and (c) the average purchase price for the shares repurchased during each month in the quarter. *See* ¶¶ 52, 54, 57-58, 84-85, 97-98. Arconic did not disclose the dates of each share repurchase.

On April 6, 2022, Apollo told defendants Myers and Asmussen that it was interested negotiating to purchase Arconic. ¶¶ 36-37. On April 19, 2022, Apollo made an offer to acquire all of Arconic's outstanding stock at a price between $34 and $36 per share, a significant cash premium to the then-current market price for Arconic common stock of $27.23 per share. ¶ 38. Apollo's proposal included "highly confident" letters from potential financing sources. ¶ 39. On April 29, 2022, Arconic's Board, which included defendants Myers and Henderson, rebuffed the offer because the Board felt it undervalued Arconic (the Board wanted a higher offer). ¶¶ 40-43.

Apollo continued to show interest in acquiring Arconic. On May 5, 2022, Apollo asked to meet with Arconic, and asked that Irenic Capital Management LP ("Irenic") join the meeting as well. ¶ 44. On May 25, 2022, a representative of Irenic met with defendant Myers and expressed

3

interest in exploring a transaction for Arconic in partnership with Apollo. ¶ 45. On May 31, 2022, defendants Myers and Henderson met with representatives of Apollo, and Apollo indicated that Apollo planned on submitting a revised proposal to acquire Arconic following Arconic's upcoming June 6, 2022 investor day presentation. ¶ 46. On June 1, 2022, Apollo requested that Apollo and Arconic enter into a confidentiality agreement. ¶ 47. On June 9, 2022, Apollo and Irenic informed Myers and Asmussen that Apollo and Irenic intended to submit a revised offer to acquire Arconic within the next two weeks. ¶ 48. Then, on June 23, 2022, Apollo informed Arconic that due to changed economic conditions, a new offer would not be made on the timeline previously indicated. ¶ 49.

In June 2022, Arconic repurchased 1,324,027 shares of its common stock through the 2021 Program for a total cost of $36,675,548, or at an average price of $27.70 per share, significantly below Apollo's April 2022 offer. ¶¶ 52-55.

Between June 23, 2022 and November 28, 2022, Apollo, Irenic, and Arconic communicated, but no offer to purchase Arconic was made during these conversations. ¶ 50. In July 2022, Arconic repurchased 1,776,471 shares of its common stock under the 2021 Program for a total cost of $50,362,953, or at an average price of $28.35. In August 2022, Arconic repurchased 1,257,192 shares of its common stock under the 2021 Program for a total cost of $35,905,404, or at an average price of $28.56 per share. ¶¶ 57-58. The purchases under the 2021 Program in July and August 2022 were made at prices significantly below the price range of Apollo's April 2022 offer. ¶ 59. Further, in August 2022, Arconic completed the repurchase of the $300 million of common stock authorized for the 2021 Program. ¶ 57.

4

On November 16, 2022, Arconic announced that its Board had approved another share purchase program authorizing Arconic to repurchase up to $200 million of common stock for a two year period, expiring on November 17, 2024 (the "2022 Program"). ¶ 62.

On November 28, 2022, Apollo and defendant Henderson met, where Apollo stated it was considering making another offer to purchase Arconic. ¶ 65. The discussed this conversation on December 2, 2022. ¶ 66. On December 7, 2022, Apollo met with defendants Myers and Asmussen and reiterated its interest in submitting a proposal to acquire Arconic, and that subject to internal approval, Apollo expected to submit an offer for Arconic the following week. ¶ 67. On December 12, 2022, Apollo submitted an offer to purchase all the outstanding shares of Arconic common stock for $30 per share, a significant premium to the closing price of Arconic common stock on December 12, 2022 of $22.57 per share. ¶¶ 68-71. The December 2022 offer referenced a number of negative developments since the April 2022 offer. ¶ 69. The December 2022 offer also stated that Apollo was willing to use its affiliated funds financing sources "to help secure the necessary debt funding to provide a fully committed binding transaction." ¶ 71. The Board and Arconic's management (including defendants Myers, Asmussen, and Henderson), and Arconic's financial advisors, evaluated the offer through January 19, 2023. ¶¶ 72-77. On January 19, 2023, the Board rebuffed Apollo's offer, but directed management to give Apollo due diligence information "to allow Apollo to consider raisings its bid." ¶ 77. On January 26, 2023, Apollo and Arconic entered into a confidentiality agreement, and on January 29, 2023, due diligence information was shared. ¶¶ 78-79. Apollo and Arconic continued discussions and negotiations, and Apollo submitted another offer to acquire Arconic at $30 per share on February 23, 2023. ¶¶ 80-82, 89-91.

In November 2022, Arconic repurchased 468,979 shares of its common stock under the 2022 Program for a total cost of $10,125,257 and at an average price of $21.59 per share. In

5

December 2022, Arconic repurchased 1,602,856 shares of its common stock under the 2022 Program for a total cost of $36,160,431 and at an average price of $22.56 per share. ¶¶ 84-85. In January 2023, Arconic repurchased 35,615 shares of its common stock under the 2022 Program for a total cost of $747,203 and at an average price of $20.98 per share. ¶¶ 97-98. Arconic's share repurchases in November 2022, December 2022, and January 2022 were at prices significantly below Apollo's December 2022 offer of $30 per share. ¶¶ 86, 99.

The Complaint alleges that Arconic, as a person in possession of material nonpublic information about Apollo's interest in and offers to acquire all the outstanding shares of Arconic at prices significantly above the then-current market price of Arconic common stock, had an obligation to either abstain for trading or disclose the material nonpublic information. Arconic did neither, and therefore engaged in a scheme to defraud and/or insider trading in violation of Section 10(b) and Rule 10b-5(a) and (c). ¶¶ 64, 86-88, 99-100, 108-110.

C.    **The Defendants' Alleged False and Misleading Statements in Violation of Section 10(b) and Rule 10b-5(b)**

The Complaint alleges that the defendants made materially false and misleading statements during the Class Period that the 2021 Program and the 2022 Program were "intended to comply with Rule 10b5-1," which prohibits trading on the basis of material nonpublic information, "and Rule 10b-18," which states that a safe harbor for company stock repurchases does not apply if the repurchase violates the federal securities laws. The Complaint alleges that these statements were materially false and misleading in violation of Section 10(b) and Rule 10b-5(b) because at the time those statements were made, Arconic had made share repurchases while in possession of material nonpublic information, and therefore Arconic's share repurchases and repurchase programs were not in compliance with Rule 10b5-1 or Rule 10b-18. ¶¶ 15, 111-119.

The Complaint also alleges that defendants Myers, Asmussen, and Arconic made false and misleading statements in violation of Section 10(b) and Rule 10b-5(b) by selectively disclosing information about Arconic's share repurchases and the approval of the 2022 Program. For example, Myers stated on May 3, 2022 that "we've still got room on that share repurchase program," and on June 6, 2022 (a time when Arconic was waiting for a revised offer from Apollo) stated that "we plan to execute the remaining $123 million of authorization before the end of this year." ¶¶ 121-122. Arconic was prohibited from trading in its common stock when in possession of material nonpublic information. The defendants' statements with respect to ongoing stock repurchases signaled to the market that there were no, and had been no, ongoing negotiations. Accordingly, when speaking about the stock repurchases, the defendants were obligated to disclose the whole truth – that they were in, or had been in, negotiations with Apollo. ¶¶ 15, 120-138.

In addition, the Complaint alleges that defendants Myers, Asmussen, and Arconic made materially false and misleading statements in their August 2, 2022, November 1, 2022, and February 21, 2023 certifications attached to Arconic's SEC filings. Those certifications stated that the SEC filings "[did] not contain any" false and misleading statements, and that the signatories had disclosed to the Board's audit committee "any fraud, whether or not material, that involves management or other employees who have a significant role in [Arconic's] internal control over financial reporting." ¶¶ 139-141. Those statements were false and misleading because, at the time they were made, Arconic's SEC filings contained false and misleading statements and Arconic's insider trading was not disclosed to the audit committee. ¶ 142.

7

**D.**     **The Truth Concerning the Defendants' Alleged Fraudulent Scheme and False and Misleading Statements is Revealed**

The Complaint alleges that the truth was revealed concerning the defendants' fraudulent scheme, insider trading, and materially false and misleading statements in violation of Section 10(b) and Rule 10b-5 in two corrective disclosures.

*First*, on February 28, 2023, during market hours, the *Wall Street Journal* ("*WSJ*") reported that Apollo had submitted a bid to purchase Arconic (but did not disclose an offer price.). ¶ 92. In response, the price of Arconic common stock increased $4.68 per share, or 21.5%, from a price immediately before the *WSJ* report of $21.76 per share to a closing price on February 28, 2023 of $26.44 per share. ¶ 93.

*Second*, on May 4, 2023, during pre-market hours, Arconic announced that it had entered into a merger agreement with Apollo to be acquired for $30.00 per share in cash. ¶ 94. In response, the price of Arconic common stock increased $6.38 per share, or 28.3%, from a closing price on May 3, 2023 of $22.55 per share to a closing price on May 4, 2023 of $28.93 per share. ¶ 95.

**E.**     **Procedural History**

On January 29, 2025, Shelby P&F filed the Complaint in this action. Also on December 29, 2024, Shelby P&F, through its counsel, published the PSLRA required notice of pendency (15 U.S.C. § 78u-4(a)(3)(A)(i)) on *Globe Newswire* announcing that this securities class action had been filed and advising the putative class members that they may move the Court no later than 60 days from the date of the notice, or by March 31, 2025, for appointment as Lead Plaintiff (the "Notice," Ruthizer Decl. Ex. 1).

## ARGUMENT

### I.    Shelby P&F Is the Most Adequate Plaintiff and Should Be Appointed Lead Plaintiff

#### A.    The Lead Plaintiff Framework Under the PSLRA

The PSLRA instructs that in a securities class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter referred to as the 'most adequate plaintiff')." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the "person or group of persons that has either filed the complaint or made a motion [for appointment as lead plaintiff]; in the determination of the court, has the largest financial interest in the relief sought by the class; and…otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). The PSLRA allows that the presumption may only be rebutted "upon proof" that the most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb); *see also Vega v. Energy Transfer LP*, No. 22-cv-4614 (AKH), 2022 U.S. Dist. LEXIS 146668, at \*3-4 (S.D.N.Y. Aug. 16, 2022).

Shelby P&F satisfies each requirement of the PSLRA, and respectfully submits that it is the presumptive "most adequate plaintiff."

#### B.    Shelby P&F Has Satisfied the PSLRA's Procedural Requirements

Shelby P&F timely filed the instant motion seeking appointment as Lead Plaintiff for the Class and approval of its selection of lead counsel for the Class. Shelby P&F has also submitted the PSLRA required a sworn certification attesting to its willingness to serve as Lead Plaintiff for the Class and to provide testimony at deposition and trial, if necessary. Ruthizer Decl. Ex. 2.

9

Shelby P&F therefore satisfies the first element of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

>C.    **Shelby P&F Has the "Largest Financial Interest" in the Relief Sought by the Class**

The PSLRA states that the Court should award the most adequate plaintiff presumption to the movant who "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The PSLRA does not specify a method to determine which lead plaintiff movant has the largest financial interest, and neither the Supreme Court nor the Second Circuit have specified a method for the calculation. *See Hoare v. Oddity Tech. Ltd.*, No. 1:24-CV-06571 (MMG), 2024 U.S. Dist. LEXIS 220596, at *6 (S.D.N.Y. Dec. 5, 2024) (citations and quotations omitted). However, "courts have consistently held that the magnitude of the loss suffered is most significant." *Vega*, 2022 U.S. Dist. LEXIS 146668, at *4 (citation, quotation, and ellipsis omitted).

Courts that have considered the largest financial interest of lead plaintiff movants in seller securities class actions, such as this case, have evaluated the number of shares sold during the Class Period and that the movants suffered losses through sales of shares at artificially deflated prices. *See San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*, 177 F. Supp. 3d 838, 840-41 (D. Del. 2016); *White Pine Invs. v. CVR Refining, LP*, No. 20-cv-2863 (AT), 2021 U.S. Dist. LEXIS 1199, at *6-7 (S.D.N.Y. Jan. 5, 2021). As evidenced by its Certification and loss chart, Shelby P&F sold 7,301 shares of Arconic common stock during the Class Period at prices that were artificially deflated due to defendants' fraudulent scheme and defendants' materially false and misleading statements. Further, Shelby P&F suffered estimated losses of approximately $42,273.98 as a result of defendants' alleged violations of the federal securities laws, calculated by multiplying the number of sold shares by the difference between the deal price ($30.00) and

the sales price. *See* Ruthizer Decl., Exs. 2-3. To the best of Shelby P&F's counsel's knowledge, there are no other lead plaintiff movants with a larger financial interest.

Accordingly, Shelby P&F satisfies the second requirement of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

**D.      Shelby P&F Satisfies the Typicality and Adequacy Requirements of Rule 23**

A prospective lead plaintiff must satisfy the requirements of Rule 23. At the lead plaintiff stage, courts need only consider whether the prospective lead plaintiff satisfies the typicality and adequacy prongs of Rule 23. *Vega*, 2022 U.S. Dist. LEXIS 146668, at * 4.

A lead plaintiff movant is typical if its claims "arise from the same course of events and [the movant] will make similar legal arguments to prove [defendants'] liability." *Id.*, at *5 (citation and quotation omitted). Here, Shelby P&F's claims are typical of those of the Class because – like all class members – it sold Arconic common stock during the Class Period at artificially deflated prices and recognized substantial losses as a result of defendants' alleged misconduct. Shelby P&F possesses claims against the defendants under the federal securities laws, which are based on the same facts and as the Class's claims. Shelby P&F therefore satisfies the typicality requirement of Rule 23(a)(3).

A lead plaintiff movant is adequate if it "[has] retained class counsel that is qualified, experienced, and generally able to conduct the litigation; there is no conflict between the [movant] and the members of the class; and, [the movant has] a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* Shelby P&F is an adequate representative. Shelby P&F's claims are not antagonistic or in conflict with those of the Class. Shelby P&F is not subject to any unique defenses. Further, Shelby P&F's losses of $42,273.98 means it has sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, whose interests align directly with Shelby P&F's interests. Shelby P&F has also demonstrated its adequacy by filing the

11

Complaint and submitting a sworn certification, as required by the PSLRA, attesting to its willingness to serve as Lead Plaintiff for the Class and to provide testimony at deposition and trial, if necessary. Ruthizer Decl., Ex. 2. Further, as described below, Shelby P&F has retained Wolf Popper LLP to act as Lead Counsel, and Wolf Popper is experienced in securities litigation.

In addition, Shelby P&F, a pension fund, is a "sophisticated institutional investor[]—the type of investor whose participation Congress sought to encourage, predicting that their involvement would significantly benefit class members." *Vega*, 2022 U.S. Dist. LEXIS 146668, at \*6.

Because Shelby P&F's claims are typical of those of the Class and because it will adequately represent the Class, it satisfies the third requirement of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

Shelby P&F respectfully submits that it is the presumptive most adequate plaintiff.

## II.    Shelby P&F's Selection of Wolf Popper to Serve as Lead Counsel Should Be Approved

Under the PSLRA framework, the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Oddity Tech.*, 2024 U.S. Dist. LEXIS 220596, at \*11.

Shelby P&F has selected Wolf Popper to act as Lead Counsel, and respectfully requests that the Court approve its selection. Wolf Popper is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in its attached resume. *See* Ruthizer Decl., Ex. 4. For example, in *Martinek v. AmTrust Financial Services, Inc.*, No. 19-cv-08030-KPF (S.D.N.Y.), Judge Katherine Polk Failla of this Court appointed Wolf Popper to serve as lead

12

counsel on behalf of a class of investors in AmTrust Financial Services preferred stock. On November 16, 2022, Judge Failla entered an order finally approving a $13 million cash settlement for the Martinek class. *Martinek*, ECF No. 111 (Final Judgment). The Court also stated that Wolf Popper "conducted the Litigation and achieved the Settlement with skill, perseverance and diligent advocacy; [and] Lead Counsel are highly experienced in class action litigation and securities class action litigation…." *Martinek v. AmTrust Financial Services, Inc.*, No. 19-cv-08030-KPF, 2022 U.S. Dist. LEXIS 209097, at *4 (S.D.N.Y. Nov. 16, 2022).

Also, in *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 2:09-cv-01713 (E.D.N.Y.), Wolf Popper represented the Public Employees' Retirement System of Mississippi as lead plaintiff and recovered $280 million for investors in residential mortgage-backed securities issued by JPMorgan Acceptance Corp. On July 24, 2014, Judge Pamela K. Chen of the Eastern District of New York entered an order approving the settlement. Judge Chen found that "the representation of both sides was obviously very vigorous. The plaintiffs expended efforts in terms of pursuing the investigation, the theories, the research and the advocacy." *J.P. Morgan Acceptance Corp. I*, ECF No. 230 (Transcript) at 19:14-17. "Certainly in the beginning, at the time when some of the legal principles that are applied in this case, in any cases related to mortgage-backed securities, was not well established. They did yeomen's work in trying to establish some of those principles.... [T]his is a good result in this particular case." *Id.* at 22:5-18.

As a result of Wolf Popper's extensive experience in litigation involving issues similar to those raised in this action, it has the skill and knowledge to prosecute this action effectively and expeditiously. The Court may be assured that by approving Shelby P&F's selection of Wolf Popper

13

to serve Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Shelby P&F respectfully requests that this Court issue an Order appointing it as Lead Plaintiff and approving Wolf Popper as Lead Counsel.

Dated: March 31, 2025
          New York, NY

Respectfully submitted,

**WOLF POPPER LLP**

*/s/ Joshua W. Ruthizer*
Robert C. Finkel
rfinkel@wolfpopper.com
Joshua W. Ruthizer
jruthizer@wolfpopper.com
Adam T. Savett
asavett@wolfpopper.com
Justyn Millamena
JMillamena@wolfpopper.com
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: (212) 759-4600

VANOVERBEKE, MICHAUD
& TIMMONY, P.C.
Thomas C. Michaud
tmichaud@vmtlaw.com
Aaron L. Castle
acastle@vmtlaw.com
79 Alfred Street
Detroit, MI 48201
Telephone: (313) 578-1200

*Attorneys for Plaintiff and Movant Charter Township of Shelby Police & Fire Pension & Retirement System and Proposed Lead Counsel for the Class*

14

## **WORD COUNT CERTIFICATION**

Pursuant to Southern District of New York Local Civil Rule 7.1(c), the undersigned hereby certifies that this memorandum of law contains 4,105 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates. I utilized the word count of the word-processing program used to prepare the document in order to obtain that word count.

/s/ Joshua W. Ruthizer
Joshua W. Ruthizer

15