UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARTER TOWNSHIP OF SHELBY POLICE & FIRE PENSION & RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ARCONIC CORPORATION, TIMOTHY MYERS, ERICK ASMUSSEN, and FREDERICK HENDERSON,<br><br>Defendants. | Civil Action No. 1:25-cv-00863-AKH<br><br><u>CLASS ACTION</u><br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL |

# I. INTRODUCTION

The above-captioned case is a putative securities class action on behalf of sellers of Arconic Inc. ("Arconic" or the "Company") common stock between April 19, 2022 and May 3, 2023, inclusive (the "Class Period"), alleging violations of the Securities Exchange Act of 1934 (the "1934 Act"). Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court "shall appoint the most adequate plaintiff as lead plaintiff." *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).

Here, City of Pontiac Reestablished General Employees' Retirement System, Indiana Electrical Workers Benefit Trust Fund IBEW, Indiana Electrical Workers Pension Trust Fund IBEW, and IBEW Local Union 481 Defined Contribution Plan and Trust (the "Pension Funds") respectfully submit that they are the presumptively most adequate plaintiff in this case because they filed a timely motion in response to a notice, have the largest financial interest in the outcome of this litigation, and will typically and adequately represent the putative class's interests. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, the Pension Funds ' selection of Robbins Geller Rudman & Dowd LLP as lead counsel for the putative class is reasonable and should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

# II. FACTUAL BACKGROUND

Arconic was a provider of aluminum sheets, plates, and extrusions, as well as innovative architectural products, that advance the ground transportation, aerospace, building and construction, industrial, and packaging end markets. On August 18, 2023, Apollo Global Management, Inc. (together with its subsidiaries, "Apollo") acquired Arconic and assumed Arconic's obligations. Prior

to that acquisition, Arconic common stock was listed and traded on the New York Stock Exchange under the symbol ARNC.

The complaint alleges that Arconic and certain of its senior officers and directors failed to disclose offers to purchase all of the outstanding shares of Arconic common stock at a material premium far above the Company's then-current stock price, while at the same time repurchasing millions of shares of Arconic common stock through stock buyback programs at prices below the offer price. These failures to disclose material non-public information artificially deflated the price of Arconic common stock. Arconic had an obligation to either disclose that it had received a formal acquisition offer from Apollo or abstain from trading in its own securities.

On April 19, 2022, Arconic received an unsolicited non-public offer from Apollo to purchase all of the outstanding shares of Arconic at a price between $34 and $36 per share. On April 29, 2022, Arconic rejected Apollo's offer. However, Apollo continued to demonstrate interest in an acquisition of Arconic. From June 1, 2022 through August 31, 2022, Arconic repurchased more than 4 million shares of its common stock at an average price of $28.21 per share, significantly below Apollo's offer of $34 to $36 per share.

On November 28, 2022, Apollo informed Arconic that it was considering submitting a new proposal for an acquisition of Arconic at a meaningful premium to Arconic's stock price, which closed at $21.65 per share on November 28, 2022. On December 12, 2022, Apollo submitted a revised proposal for to acquire Arconic in an all-cash transaction at a price of $30.00 per share, a meaningful premium to the price of Arconic's common stock, which closed on December 12, 2022 at $22.57 per share. From November 2022 to January 2023, Arconic repurchased more than 2 million shares of Arconic common stock on the public markets at an average price of $22.32 per share.

On May 4, 2023, during pre-market hours, Arconic announced that it had entered into an agreement to be acquired by Apollo in an all-cash transaction at $30.00 per share. In response, the price of Arconic common stock increased $6.38 per share, or 28.3%, from a closing price on May 3, 2023 of $22.55 per share to a closing price on May 4, 2023 of $28.93 per share. The merger eventually closed on August 18, 2023, with Apollo acquiring Arconic for $30 per share.

As a result of defendants' wrongful acts and omissions, the Pension Funds and other Arconic investors have suffered substantial losses.

## III. ARGUMENT

### A. The Pension Funds Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. §78u-4(a)(3)(A)(i). The statutory notice in this case was published on January 29, 2025. *See* Declaration of David A. Rosenfeld in Support of Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Rosenfeld Decl."), Ex. 1.

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;

> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The Pension Funds meet these requirements and should be appointed Lead Plaintiff.

**1. The Pension Funds' Motion Is Timely**

The January 29, 2025, statutory notice published in this case advised purported class members of the pendency of the action, the claims asserted, the proposed class period, and the right to move the Court to be appointed as lead plaintiff by March 31, 2025. *See* Rosenfeld Decl., Ex. 1. Because the Pension Funds' motion has been filed by the statutory deadline, they are eligible for appointment as lead plaintiff.

**2. The Pension Funds Have a Substantial Financial Interest in the Relief Sought by the Class**

Courts that have considered the largest financial interest of lead plaintiff movants in seller securities class actions, such as this case, have evaluated the number of shares sold during the Class Period. *See San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*, 177 F. Supp. 3d 838, 840 (D. Del. 2016); *see also Silverberg v. DryShips Inc.*, 2018 WL 10669653, at *5-*6 (E.D.N.Y. Aug. 21, 2018); *White Pine Invs. v. CVR Refin., LP*, 2021 WL 38155, at *3 (S.D.N.Y. Jan. 5, 2021). As evidenced by their Certifications and loss chart, the Pension Funds sold 37,704 shares of Arconic common stock during the Class Period at prices that were artificially deflated due to defendants' wrongful acts and omissions. *See* Rosenfeld Decl., Exs. 2-3.

Further, the Pension Funds suffered estimated losses of approximately $320,461 as a result of defendants' alleged violations of the federal securities laws, calculated by multiplying the number of sold shares by the difference between the deal price ($30) and the sales prices. *See*

Rosenfeld Decl., Exs. 2-3. To the best of the Pension Funds' counsel's knowledge, there are no other plaintiffs with a larger financial interest.

### 3. The Pension Funds Are Typical and Adequate of the Purported Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). At this early stage of litigation, only typicality and adequacy are pertinent. *See Lopez v. CTPartners Exec. Search Inc.*, 2015 WL 2431484, at *2 (S.D.N.Y. May 18, 2015) (Engelmayer, J.).

"A lead plaintiff's claims are typical where 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* (citation omitted). "A lead plaintiff is adequate where he 'does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent.'" *Id.* (citation omitted).

The Pension Funds satisfy the typicality requirement as they seek to represent a class of similarly situated sellers of Arconic common stock and suffered a loss as a result of defendants' alleged misconduct. Indeed, like all other class members, the Pension Funds: (1) sold Arconic common stock during the Class Period; (2) were adversely affected by defendants' scheme and omissions; and (3) suffered damages thereby. In other words, the Pension Funds' claims arise from the same alleged misconduct and are based on the same legal theory as the claims of other class members. Consistent with the PSLRA, the Pension Funds' Certification sets forth their transactions in Arconic common stock during the Class Period. Moreover, as sophisticated fiduciaries that oversee hundreds of millions of dollars in asserts for their members, the Pension Funds are precisely the type of investors whose participation in securities class actions Congress sought to encourage

through the enactment of the PSLRA: "Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members." *In re Cendant Corp. Litig*., 264 F.3d 201, 273 (3d Cir. 2001); *see City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc*., 269 F.R.D. 291, 294 (S.D.N.Y. 2010) ("The drafters of the PSLRA sought to reduce the influence of lawyers on class action securities suits by weighting the determination of lead plaintiff in favor of large institutional investors.").

As set forth in greater detail in the Joint Declaration submitted herewith (*see* Rosenfeld Decl., Ex. 4), the Pension Funds fully understand the obligations of a lead plaintiff to absent class members under the PSLRA and are willing and able to undertake the responsibilities of lead plaintiff in this litigation to ensure vigorous and efficient prosecution. The Pension Funds' collaboration in this litigation follows from their roles as fiduciaries to their respective members, their shared goals and interests in maximizing fund assets, and their previous experience serving as representative plaintiffs as part of small groups in securities litigation. Moreover, before filing this motion, representatives of the Pension Funds discussed, among other things, the lead plaintiff process, the merits of the claims and the status of the litigation, and the Pension Funds' plans and strategy for the joint prosecution of this action and directing counsel. *Id*. Thus, the Pension Funds have demonstrated their incentive and commitment to vigorously prosecute this case in a cohesive and coordinated fashion, and the ability to supervise and monitor counsel.

Because the Pension Funds filed a timely motion, have a large financial interest in the relief sought by the class, are typical and adequate of the putative class, and selected qualified counsel (as set forth below), the Court should adopt the presumption that they are the "most adequate plaintiff."

### B. The Court Should Approve the Pension Funds' Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Pension Funds have selected Robbins Geller to serve as lead counsel in this case.[1]

Robbins Geller, a 200-attorney nationwide law firm with offices in New York, regularly practices complex securities litigation. The Firm's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. Courts throughout the country, including this Court, have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases. *See, e.g.*, *In re Am. Realty Capital Props., Inc. Litig.*, No. 1:15-mc-00040-AKH, ECF No. 1316 at 55 (S.D.N.Y. Jan. 21, 2020) (Hellerstein, J.) (concerning Robbins Geller's role as sole lead counsel in recovering $1.025 billion for the class in a securities case, stating "the role of lead counsel was fulfilled in an extremely fine fashion by [Robbins Geller]. At every juncture, the representations made to me were reliable, the arguments were cogent, and the representation of their client was zealous."); *Jones v. Pfizer, Inc.*, No. 1:10-cv-03864-AKH, ECF No. 502 at 42-43 (S.D.N.Y. July 30, 2015) (Hellerstein, J.) (commending Robbins Geller for its work in achieving $400 million settlement on the eve of trial: "Without the quality and the toughness that you have exhibited, our society would not be as good as it is with all its problems. So from me to you is a vote of thanks for devoting yourself to this work and doing it well. . . . You did a really good job. Congratulations."); *Lopez*, 2015 WL 2431484, at *3 ("Having reviewed [Robbins Geller's]

---

1 For a detailed description of Robbins Geller's track record, resources, and attorneys, please see https://www.rgrdlaw.com. An electronic or paper version of the Firm's resume is available upon the Court's request, if preferred.

submissions as to its pertinent background and experience, including its experience litigating securities class actions, the Court finds that it is well qualified to serve as lead counsel.); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783, ECF No. 243 at 10-11 (S.D.N.Y. May 2, 2016) (Preska, J.) (concerning Robbins Geller's role as sole lead counsel in recovering $272 million for the class of MBS purchasers, stating: "Counsel, thank you for your papers. They were, by the way, extraordinary papers in support of the settlement," and acknowledging "plaintiffs' counsel's success in the Second Circuit essentially changing the law. I will also note what counsel have said, and that is that this case illustrates the proper functioning of the statute. . . . Counsel, you can all be proud of what you've done for your clients. You've done an extraordinarily good job."). Robbins Geller attorneys have obtained the largest securities fraud class action recovery in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits.[2]

As such, the Pension Funds' selection of Robbins Geller as lead counsel is reasonable and should be approved.

---

[2] *See In re Enron Corp. Sec. Litig.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *Lawrence E. Jaffe Pension Fund v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery ever following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Group Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

## IV. CONCLUSION

The Pension Funds have satisfied each of the PSLRA's requirements for appointment as lead plaintiff. Accordingly, the Pension Funds respectfully request that the Court grant their motion.

DATED: March 31, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
DAVID A. ROSENFELD

s/David A. Rosenfeld
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
KENNETH P. DOLITSKY
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
kdolitsky@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

ASHERKELLY
CYNTHIA J. BILLINGS-DUNN
25800 Northwestern Highway, Suite 1100
Southfield, MI 48075
Telephone: 248/746-2710
cbdunn@asherkellylaw.com

Additional Counsel